IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01499-WJM-NRN

DANIEL JAMES VIGIL,

Plaintiff,

v.

RICK RAEMISH,
SEAN FOSTER,
THEORDOR LAWRENCE,
DENESE ASHER,
JHON [sic] & JANE DOE,
CAPTAIN BOSLEY,
SGT ARAGON,
MAJOR BUCHOLTZ, and
DEBORAH BORREGO,

Defendants.

---

REPORT AND RECOMENDATION ON
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (DKT. #49)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #51) issued by Judge William J. Martinez referring Defendants Rick Raemisch, Sean Foster, Theordor [sic] Lawrence, Denise Asher, Captain Bosley, Sgt. Aragon, Major Bucholtz, and Deborah Borrego (collectively "Defendants") Motion to Dismiss Amended Complaint. (Dkt. #49.) The Court has carefully considered the motion and Plaintiff Daniel James Vigil's response. (Dkt. #60.) On February 13, 2019, the Court heard argument on the subject motion. (Dkt. #63.) The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and makes the following recommendation.

1

# I. BACKGROUND

**a. Procedural History**

Mr. Vigil, proceeding pro se, initiated this case on June 15, 2018. (Dkt. #1.) On June 20, 2018, Judge Lewis T. Babcock dismissed his claims against Defendants Rick Raemisch and Sean Foster, and the remaining claims were drawn to Magistrate Judge Michael J. Watanabe. (Dkt. #5.) Upon Judge Watanabe's retirement, the case was reassigned to me on August 15, 2018. (Dkt. #22.) Soon thereafter, Defendants moved to dismiss Mr. Vigil's Complaint and asked the Court to stay discovery pending a ruling on the motion. (Dkt. ##28 & 30.) The Court granted the motion to stay. (Dkt. #36.) In response to Defendants' motion to dismiss, on September 28, 2018, Mr. Vigil filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). (Dkt. #45.) On October 19, 2019, Defendants filed the subject motion to dismiss. (Dkt. #49.)

**b. Mr. Vigil's Amended Complaint**

The nature of Mr. Vigil's claims requires a relatively detailed recitation of the chronology of events described in his Amended Complaint. Construing Mr. Vigil's allegations liberally and assuming all well-pled allegations as true, he asserts as follows.

- Mr. Vigil is in the custody of Colorado Department of Corrections ("CDOC"). He is currently housed in the Buena Vista Correctional Facility ("BVCF"), but most of the events giving rise to this lawsuit occurred at the Arkansas Valley Correctional Facility ("AVCF") in Ordway, Colorado.

- On the evening of November 21, 2016, Mr. Vigil tripped on a damaged portion of an AVCF sidewalk. He fell and broke his right arm and injured his right index finger.

- Although he was in extreme pain, Mr. Vigil at first hoped his injuries would improve on their own. When the pain got worse, he "put in several medical requests to be seen," but received no response.

- On November 29, 2016, and only after Mr. Vigil showed prison staff his broken arm, Defendant Lawrence, an AVCF physician assistant, examined Mr. Vigil. Mr. Lawrence ordered an x-ray and gave Mr. Vigil a sling.

- An x-ray was taken on December 2, 2016. Four days later Mr. Lawrence informed Mr. Vigil that his arm was broken and he would be sent to an orthopedic specialist.

- On December 20, 2016, Mr. Vigil was being transported to see an orthopedic specialist in Pueblo, Colorado when the van he was in had a flat tire, stranding him and two CDOC officers for several hours. The officers were eventually told to simply return Mr. Vigil to AVCF, and Mr. Vigil did not see the specialist.

- Mr. Vigil did not see to an orthopedic specialist until February 3, 2017 (ten weeks after his arm was broken), despite over 20 unanswered requests to seen by medical personal in the intervening weeks. He had not been given a cast or pain medication, other than Tylenol, during this period.

- During the February 3, 2017 examination, the orthopedic specialist "was very upset" that it had taken so long for prison staff to address Mr. Vigil's broken arm and, given the delay, she was unsure if anything could be done short of surgery. She prescribed physical therapy three times a week

- for four weeks, and Mr. Vigil was given two bandages to wrap his arm and a foam rubber ball. He was told to follow-up with the doctor for re-evaluation.
- However, Mr. Vigil was not taken to physical therapy and was not taken to see another doctor until he was moved out of the AVCF six months later.
- About three weeks after the February 3, 2017 appointment, Mr. Vigil asked family members to try to find out what they could about his medical treatment. Mr. Vigil's father spoke to the orthopedic specialist who conducted the exam and was told that the CDOC refused to pay for Mr. Vigil's physical therapy.
- Mr. Vigil then began to file grievances regarding his lack of medical treatment and the failure to properly maintain the sidewalk, which he contends was a known danger even after repairs had been made. The CDOC "refused" his grievances because they were not filed within 30 days of the incident.
- On May 26, 2017, more than six months after the fall, Mr. Vigil received a note from Dr. Magnuson, a physician at another CDOC facility, that stated, "Your recent x-ray radius-neck fracture not healed yet [sic].["]
- In May 2017, Mr. Vigil was sent to Dr. Paterson at the Canyon City Territorial Prison. Dr. Patterson told him that due to the serious condition of his arm, Mr. Vigil's medical options were now limited to major surgery. Mr. Vigil was faced with the prospect of a complete replacement of the elbow joint with a prosthetic elbow.

4

- In June 2018, when this lawsuit was filed, Mr. Vigil still had not had surgery, even though he was told that two surgeons and a doctor had appealed the CDOC's decision to refuse to pay for the surgery. Mr. Vigil was taken off Ansaid, a nonsteroidal anti-inflammatory drug (NSAID), in preparation for surgery.
- In the late summer/early fall of 2018, Mr. Vigil finally had surgery on his arm and was able to start physical therapy. It turned out that his elbow joint did not need to be completely replaced. Instead, a doctor performed a bone graft from his hip and used screws, metal straps, and a metal splint to repair his arm.
- As of September 24, 2018, Mr. Vigil was also scheduled to have surgery on his right hand, which had also been injured in the fall.

Mr. Vigil asserts three claims for relief pursuant to 42 U.S.C. § 1983. Claim One is an Eighth Amendment claim for deliberate indifference to serious medical need against Defendants Lawrence, Asher, Jane and John Doe, and Borrego. Mr. Vigil identifies Mr. Lawrence as the physician assistant at AVCF who was in charge of treating his injuries. He alleges that Mr. Lawrence failed to undertake the proper procedures to ensure that Mr. Vigil's medical treatment was proficient, timely, and professional. Ms. Asher is sued as the head the AVCF nursing department. Mr. Vigil claims she was responsible for scheduling medical appointments. Ms. Borrego is a nurse practitioner who treated Mr. Vigil at the BVCF. The Doe Defendants are

apparently individuals in the CDOC's "Insurance Department," that refused to pay for his surgery.[1]

Claim Two is an Eighth Amendment claim for deliberate indifference to the damaged condition of the sidewalk against Defendants Bucholtz, Bosley, and Aragon. These Defendants are allegedly responsible for maintenance at the AVCF.

Finally, Claim Three is another Eighth Amendment deliberate indifference claim against Defendant Borrego. This claim is essentially duplicative of Claim One as it pertains to Ms. Borrego, and the Court will discuss the two claims together.

## II. LEGAL STANDARDS

**a. Pro Se Plaintiff**

Mr. Vigil is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal.*

---

[1] The Court so presumes because in his Amended Complaint, Mr. Vigil states, "The Colorado Department of Corrections, Medical Contractor, Insurance Department, is deliberately indifferent to my serious medical needs by refusing to pay for the needed surgery. (Dkt. #45 at 11) (extraneous capitalization and commas omitted.) Moreover, in his response to Judge Watanabe's Order to Show Cause regarding the Doe Defendants (Dkt. #10), Mr. Vigil informed the Court that the Doe Defendants are "Medical Contractors who refused to pay medical costs[.]" (Dkt. #19 at 1) (extraneous parentheses and commas omitted.)

*State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**b. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two

7

prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

**c. Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the

plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Qualified immunity is immunity from suit, rather than a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

### III. ANALYSIS

Defendants move to dismiss Mr. Vigil's lawsuit on several grounds. They argue (1) they are immune from liability for claims for damages against them in their official capacities; (2) Defendants Raemisch and Foster were previously dismissed for lack of personal participation and Mr. Vigil's Amended Complaint makes no new allegations pertaining to these Defendants; (3) Mr. Vigil fails to state any claim under the Eighth Amendment; and (4) they are entitled to qualified immunity.

### a. Eleventh Amendment Immunity

As an initial matter, to the extent that Mr. Vigil asserts claims for damages against Defendants in their official capacities, such claims are barred by Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

### b. Claims Against Raemisch and Foster

As noted above, Judge Babcock dismissed Mr. Vigil's claims against Defendants Rick Raemisch, the CDOC's Executive Director, and Sean Foster, the AVCF Warden. Judge Babcock reasoned as follows:

> Personal participation is an essential allegation in a § 1983 action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each individual defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each individual defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).
>
> Plaintiff does not plead adequate personal participation by Defendants Raemisch and Foster. The allegations against these defendants rely solely on conclusory allegations of supervisory liability against Defendant Raemisch as "the Director of all Colorado State Prisons" and Defendant Foster as the acting Warden when Plaintiff incurred his injuries. (ECF No. 1 at 3). These defendants may not be held liable for the allegedly unconstitutional conduct of their subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, the Court will dismiss the claims as alleged against Defendants Raemisch and Foster with prejudice as legally frivolous.

(Dkt. #5 at 3.)

Mr. Vigil offers no new or additional facts that support the reintroduction of these Defendants in this lawsuit. Thus, Judge Babcock's analysis applies with equal force to Mr. Vigil's Amended Complaint, and the Court recommends that the claims against these Defendants be dismissed.

**c. Mr. Vigil's Eighth Amendment Claims**

Mr. Vigil alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by (1) the conditions of his confinement at AVCF considering the danger posed by the damaged sidewalk, and (2) Defendants' deliberate indifference to his serious medical needs. The Court will address each issue in turn.

**1. Conditions of Confinement**

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As to the first requirement, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* This is an objective standard. *Lucero v. Mesa Cty. Sheriff's Dep't*, 297 F. App'x. 764, 766 (10th Cir. 2008) (citing *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)).

Mr. Vigil cannot satisfy the first element of a conditions of confinement claim. "The Eighth Amendment does not sweep so broadly as to include possible latent harms to health." *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992). Rather, "the 'core areas' of any Eighth Amendment claim are shelter, sanitation, food, personal safety, medical care, and adequate clothing." *Id.* Pursuant to Tenth Circuit authority, for Mr. Vigil to prevail on this type of conditions of confinement claim, he must allege "special or unique circumstances" that requires the Court "to depart from the general rule barring Eighth Amendment liability in prison slip and fall cases." *Reynolds v. Powell*,

370 F.3d 1028, 1031-32 (10th Cir. 2004). *See also LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (noting that "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment") (quotation omitted). Mr. Vigil's only allegation is that the sidewalk in question was "damaged" and therefore dangerous to him and other inmates. Objectively, this allegation is insufficient to establish the type of "special or unique circumstances" that would implicate an Eighth Amendment violation. *See Ely v. Bowers*, No. 4:07CV961 CEJ, 2007 WL 4205802, at *1 (E.D. Mo. Nov. 26, 2007) (finding that a "broken and unlevel" section of sidewalk does not constitute a substantial risk of harm to prisoner).

Accordingly, Defendants Bucholtz, Bosley, and Aragon are entitled to qualified immunity, and the Court recommends that Mr. Vigil's claim against them be dismissed.

**2. Deliberate Indifference to Serious Medical Needs**

Next, Defendants argue that Mr. Vigils alleges, at most, that Defendants Lawrence, Asher, the Doe Defendants, and Borrego were negligent in their medical treatment, which is insufficient as a matter of law to state a claim for deliberate indifference to serious medical needs. The Court agrees as to all Defendants but Mr. Lawrence.

Judge Martinez recently set forth the standard for an Eighth Amendment claim for deliberate indifference to a prisoner's serious medical needs:

> The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act *deliberately and indifferently* to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (emphasis added). An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component requires a showing that the prisoner's medical need was "sufficiently serious." *Id.* A medical need is

12

> considered sufficiently serious when "that condition has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and internal quotation marks omitted). Under the subjective component, the plaintiff must establish that the defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt*, 199 F.3d at 1224 (internal quotation marks omitted). "The official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have also drawn the inference." *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (alteration omitted). Moreover, "prison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). Additionally, "use of a subjective test will not foreclose prospective injunctive relief, nor require a prisoner to suffer physical injury before obtaining prospective relief." *Id.* at 826–27.

*Sardakowski v. Lish*, No. 17-cv-2542-WJM-KMT, 2018 WL 4509526, at *3 (D. Colo. Sept. 20, 2018).

Defendants do not challenge that Mr. Vigil's broken arm and injured hand were sufficiently serious medical conditions for Eighth Amendment purposes, and the Court will assume so for the purposes of this motion. However, Defendants claim that Mr. Vigil does not allege that he was denied treatment, but only that the treatment he did receive was untimely and ineffective. Such allegations would be insufficient because "even if a prison official's actions fell below a reasonable standard of care, 'the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'" *Sardakowski*, 2018 WL 4509526, at *4 (quoting *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2016)).

It is clear to the Court that Mr. Vigil's claims against Ms. Asher, the Doe Defendants, and Ms. Borrego are inadequate, on their face, to state an Eighth Amendment claim. First, Mr. Vigil does not allege that Ms. Asher had any subjective

knowledge of his condition, and her position as a supervisor of the AVCF nursing staff alone does not give rise to liability. *See Iqbal*, 556 U.S. at 676. Similarly, Mr. Vigil's allegations against the Doe Defendants (i.e., the "Medical Contractors"/"Insurance Department" that refused to pay for his surgery) are threadbare and not supported by factual averments.[2] As to Ms. Borrego, Mr. Vigil does not allege that she denied him medical treatment. Instead, he claims that she was not truthful with him regarding scheduling the surgery on his arm.[3] The type of general deceitfulness (rather confusingly) described by Mr. Vigil does not give rise to Eighth Amendment liability. Due to Mr. Vigil's failure to state a cognizable constitutional claim, these Defendants are entitled to qualified immunity.

---

[2] The Court does not foreclose the possibility that during discovery Mr. Vigil may learn of individual CDOC employees, other than Mr. Lawrence, who knew of his injuries but refused to provide him treatment. If that turns out to be the case, Mr. Vigil may file the appropriate motion to amend.

[3] The gravamen of Mr. Vigil's allegations against Ms. Borrego is as follows:

> I have talked with [Ms. Borrego] and she told that the surgeon has requested the disco of x-ray films, but she does not know if [the CDOC] has sent them. I told Mrs. Borrego that I thought the surgery had already been scheduled, she told me not to believe anything that the doctors and surgeons had told me.
> She said she could tell me anything she wanted to and that it would not mean it was going to happen, or if it was the truth, for that matter.
> Because it was just words and it was up to [the CDOC] to make the ultimate decision to do something or to do nothing and she most likely would not be notified because the people in charge tell her very little or nothing about what they decide to do.
> After hearing her response, I don't know who to believe anymore and this certainty is causing me a lot of additional and unneeded pain and suffering by not knowing what is next are they [sic] [the CDOC] Medical Providers going to fix my arm or not.

(Dkt. #45 at 12) (extraneous commas omitted.)

Mr. Vigil's allegations against Mr. Lawrence, however, require closer attention. Accepting Mr. Vigil's allegations as true, Mr. Lawrence knew on December 6, 2016 that Mr. Vigil had a broken arm. He knew at that time that Mr. Vigil should see an orthopedic specialist. While Mr. Lawrence cannot be blamed for the flat tire that caused Mr. Vigil to miss the December 20, 2016 appointment, his failure to respond to Mr. Vigil's subsequent requests for medical attention or promptly reschedule the orthopedic examination exposes him to potential Eighth Amendment liability. As Mr. Vigil notes, it ended up taking over three months from the date of his injury for Mr. Vigil to see a specialist. In the meantime, he was "treated" with a sling and Tylenol, and after he missed the December 20, 2016 appointment, Mr. Vigil claims he was not even given Tylenol.

The Court recognizes that delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). Nevertheless, the Court finds that, construing his allegations liberally and in the most favorable light, Mr. Vigil has cleared this hurdle. When at last he was able to see the orthopedic specialist, **seven weeks** after the abortive first appointment, she was "very upset" that it had taken so long to get Mr. Vigil in to see her and, due to the delay, she was not sure if anything could be done short of surgery. Hoping to avoid this, she prescribed "aggressive" physical therapy. Then, when Mr. Vigil was returned to Mr. Lawrence's care, no physical therapy was provided, and Mr. Lawrence failed to respond to Mr. Vigil's requests for attention. Indeed, Mr. Vigil only learned that the CDOC was denying the prescribed

15

physical therapy after he recruited family members to inquire about the state of his medical treatment.

As of May 26, 2017, Mr. Vigil's fracture still had not healed. Mr. Vigil plausibly alleges that, because of these significant delays, his broken arm required major surgical intervention that could have been avoided had been provided adequate treatment in the first place. While Mr. Vigil did not end up with a prosthetic elbow, doctors did have to harvest bone from his hip to screw into his right arm. Whether this would have happened had Mr. Lawrence not delayed and/or denied him treatment is a question of fact that cannot be decided at this early stage. Construing Mr. Vigil's allegations liberally, I must assume it to be true. Accordingly, the Court finds that Mr. Vigil's Amended Complaint states a claim for deliberate indifference to serious medical needs against Mr. Lawrence.

Finding so, the Court must now turn to whether Mr. Lawrence is nevertheless entitled to qualified immunity. This inquiry turns on whether Mr. Lawrence's conduct violated clearly established law. The Court finds it did.

It cannot be questioned that the government has an obligation to provide medical care for the incarcerated: "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Thus, "pain and suffering which no one suggests would serve any penological purpose" is "inconsistent with contemporary standards of decency" and therefore violative of the Eighth Amendment. *Id.* The Tenth Circuit has likewise recognized that a "prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock*, 218 F.3d at 1209 (10th Cir. 2000)

(citing *Estelle*, 429 U.S. at 102). In *Sealock*, the court held that a medical professional who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other personnel capable of treating the condition" may be liable under § 1983 "if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Id.* at 1211. Thus, "the Tenth Circuit recognizes two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Jenkins v. Utah Cty. Jail*, No. 2:11-cv-00761, 2015 WL 164194, at *12 (D. Utah Jan. 13, 2015) (citing *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) and *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005)).

Here, Mr. Lawrence's conduct arguably falls under both categories. He was a medical professional who knew of and yet failed to treat Mr. Vigil's broken arm, which constitutes a significant injury. *See, e.g., Clemmons*, 956 F.2d at 1527 (citing cases holding that broken bones are sufficiently serious for purpose of Eighth Amendment). He could also be said to have played a gatekeeper role in that he believed that Mr. Vigil should see an orthopedic specialist, and was on notice that delaying this appointment for seven weeks may rise to the level of deliberate indifference. Accordingly, "Tenth Circuit case law involving deliberate indifference and medical treatment in this context is not so general as to deprive reasonable employees of notice of their constitutional obligation." *Jenkins*, 2015 WL 164194, at *12. The Court finds that Mr. Vigil has satisfied his burden of demonstrating a clearly established right in the context of this case, and recommends that his claim against Mr. Lawrence be allowed to proceed.

## IV. RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Amended Complaint (Dkt. #49) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **GRANTED** as to any claim for damages asserted against Defendants in their official capacities;

- **GRANTED** as to any claim asserted against Defendants Raemisch and Foster;

  **GRANTED** as to Claim One against Defendants Ms. Asher, the Doe Defendants, and Ms. Borrego;

- **GRANTED** as to Claim Two;

- **GRANTED** as to Claim Three; and

- **DENIED** as to Claim One against Defendant Lawrence.


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

| | | |
|---|---|---|
| Dated: | March 29, 2019<br>Denver, Colorado | */s/ N. Reid Neureiter*<br>N. Reid. Neureiter<br>United States Magistrate Judge |