IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1499-WJM-NRN

DANIEL JAMES VIGIL,

    Plaintiff,

v.

TEDDY L. LAURENCE, in his individual capacity;
PHYSICIAN HEALTH PARTNERS, INC. D/B/A
CORRECTIONAL HEALTH PARTNERS, LLC a Colorado corporation;
ROGER CASTILLO, in his individual capacity;
LINDA PARO, in her individual capacity;
DAPHNE MILLER, in her individual capacity;
JOHN/JANE DOE(s), in his or her individual and official capacity;
RICK RAEMISCH, in his individual and official capacity;
SEAN FOSTER, in his individual and official capacity;
SUSAN TIONA, in her individual and official capacity;
DAYNA JOHNSON, in her individual and official capacity;
RENAE JORDAN, in her individual and official capacity;
MICHELLE BRODEUR, in her individual and official capacity;
VANESSA CARSON, in her individual and official capacity;
NICOLE BLATNICK, in her individual and official capacity; and
DEBORAH BORREGO, in her individual capacity,

    Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff Daniel Vigil's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motions"). For the following reasons, the Court denies Defendants Correctional Health Partners ("CHP") and Roger Castillo's (collectively, "CHP Defendants") Motion and grants in part Defendants Deborah Borrego, Sean Foster, Teddy Laurence, Daphne

Miller, and Linda Paro's (collectively, "CDOC Defendants") Motion.

## I. BACKGROUND

The following facts are taken from Vigil's Third Amended Complaint, which the Court assumes are true for the purpose of resolving the Motions to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Vigil is currently incarcerated at Buena Vista Correctional Facility ("BVCF"), a facility of the Colorado Department of Corrections ("CDOC"). (ECF No. 155 ¶ 1.) CHP is a third-party healthcare administrator which reviews and approves requests for medical care for individuals incarcerated in CDOC facilities. (*Id.* ¶ 3.) Defendant Roger Castillo served as director of CHP during the relevant period. (*Id.* ¶ 4.) Vigil brings this action against, *inter alia*, CHP, Castillo, Borrego, Foster, Laurence, Miller, and Paro.[1] (*Id.* ¶¶ 2–7, 14.)

This action arises out of events subsequent to the fracture of Vigil's arm in November 2016, which occurred at Arkansas Valley Correctional Facility ("AVCF"), where Vigil was incarcerated prior to his transfer to BVCF. (*Id.* ¶ 29.) Vigil alleges that after fracturing his right arm by tripping and falling on pavement, he did not receive proper medical treatment for his injuries. (*Id.* ¶¶ 93–181.) Specifically, he alleges that CHP Defendants denied or delayed responding to his requests for medical care, and that CDOC Defendants similarly failed to timely respond to his treatment requests or provide adequate follow-up care for his injury. (*Id.* ¶¶ 93–181.)

Vigil alleges that the delays and denials of treatment prevented his fractured arm from healing properly. (*Id.* ¶¶ 93–181.) Vigil underwent invasive surgery on June 15,

---

[1] The Court acknowledges that Defendants Brodeur, Carson, Tiona, and Blatnick have also filed a Motion to Dismiss (ECF No. 210), which it will address by way of separate Order.

2018, more than 18 months after his initial injury. (*Id.* ¶ 89.) The surgery involved the extraction of bone from his hip and grafting into his arm to correct the break. (*Id.*) Vigil expects that he will never recover full range of motion of his right arm. (*Id.* ¶ 81.)

Vigil alleges that Defendants' actions amounted to deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the Constitution. (*Id.* ¶¶ 93–181.) He brings this action pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 93–181.)

Vigil initiated this action on June 15, 2018. (ECF No. 1.) Vigil filed his Third Amended Complaint on June 23, 2020, which is the operative complaint. (ECF No. 155.) CHP Defendants filed their Motion to Dismiss on May 21, 2020.[2] (ECF No. 142.) CDOC Defendants filed their Motion to Dismiss on July 6, 2020. (ECF No. 160.) The Motions to Dismiss are fully briefed. (ECF Nos. 162, 169, 171 & 172.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of

---

[2] CHP Defendants' Motion originally targeted Vigil's Second Amended Complaint, as the Motion was filed prior to Vigil's filing of his Third Amended Complaint. Pursuant to the Court's Order of June 26, 2020, however, the Court construes CHP Defendants' Motion as directed at the Third Amended Complaint. (ECF No. 157.)

3

pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

**A.    Statute of Limitations**

Vigil's § 1983 claim is subject to the two-year statute of limitations set forth in Colorado Revised Statute § 13-80-102(1)(g). *See* Colo. Rev. Stat. § 13-80-102(1)(g) (2014) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).

    i.    *CHP Defendants*

CHP Defendants argue that Vigil's claims against them are time-barred, as the underlying events occurred more than two years prior to the filing of his Second Amended Complaint on March 16, 2020, which first named them as defendants. (ECF No. 142 at 7–9.)

CHP Defendants argue that Vigil's claims against CHP stemming from all but one alleged instance are also time-barred. (ECF No. 142 at 8–9.) Vigil alleges several instances of CHP's improper delays and denials of medical appointments and referrals between December 2016 and November 2017. (ECF No. 155 ¶¶ 38, 77, 87.) Vigil also alleges that Castillo, the director of CHP, improperly denied Vigil's request for a follow-

4

up appointment on February 9, 2017 and Vigil's request for surgery on August 20, 2017. (ECF No. 155 ¶¶ 48, 77.)  As these events occurred more than two years prior to the filing of the Second Amended Complaint on March 16, 2020, CHP argues that these allegations cannot form the basis for Vigil's claims.  (ECF No. 142 at 8–9.)

Vigil does not dispute that his allegations against CHP and Castillo accrued more than two years prior to the filing of his Second Amended Complaint, but argues that the relation-back doctrine preserves his claims.  (ECF No. 162 at 7.)  He argues that the Second and Third Amended Complaints relate back to the filing of his initial Complaint in 2018.  (*Id.*)  Vigil posits that he attempted to identify CHP and Castillo as "CDOC Prison Medical Contractors," which constituted a misnomer.  (*Id.* at 8.)

An amended complaint naming a new party to an action relates back to the filing of an original complaint if the party to be brought in

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii).  Further, the amendment must assert a claim arising out of the conduct, transaction, or occurrence set out in the original pleading.  *Id.* 15(c)(1)(B).

Vigil's claims against CHP and Castillo arise out of the same underlying facts: the delay and denial of medical treatment.  (ECF No. 155 ¶¶ 93–181.)  The relation-back inquiry therefore turns on whether CHP and Castillo had notice that they may be implicated in this action.

The Tenth Circuit has held that the plaintiff's designation of an unknown

5

defendant in an initial complaint is not a formal defect, and "later amendment that specifically names that defendant does not relate back to the original complaint." *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (stating that "as a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'"). Vigil argues, however, that the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), abrogated the Tenth Circuit's decision in *Garrett*. (ECF No. 162 at 7–8.)

In *Krupski*, the plaintiff sued a corporation for her injury on a cruise ship, and later discovered that a different entity owned the ship where her injury took place. *Krupski*, 560 U.S. at 544. The *Krupski* plaintiff sought to amend her complaint to implicate the new entity, which argued that her claims were time-barred. *Id.* The Supreme Court permitted the plaintiff to name the new entity as a defendant, emphasizing that evasion of suit "would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* at 550. The Supreme Court held the focus of the relation back inquiry to be "what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Id.* at 541.

Judges in the District of Colorado have held that *Krupski* abrogates the Tenth Circuit's holding in *Garrett*, as the Supreme Court intended the Rule 15(c) inquiry to focus on whether a defendant knew or should have known of the possibility of his implication in the suit, rather than the plaintiff's lack of knowledge. *See, e.g.*, *Orwig v. Brooks*, 2018 WL 1905144 (D. Colo. Apr. 23, 2018) (finding that amendment naming

6

new CDOC officials as defendants related back based on plaintiff's mistake as to their roles and consider plaintiff's *pro se* status); *Estate of Roemer v. Shoaga*, 2017 WL 1190558 (D. Colo. Mar. 31, 2017) (allowing relation back where plaintiff discovered that authority rested with proposed defendants rather than previously named defendant). For example, courts have found constructive knowledge by prison official defendants where the plaintiff's complaint challenged a particular administrative process for which the proposed defendants were responsible. *See Roemer*, 2017 WL 1990558, at *6–7. Here, Vigil is similarly challenging the practice of denying his medical care requests, which is CHP and Castillo's role. (ECF No. 155 ¶¶ 93–181.)

Other courts within the Tenth Circuit have also indicated that the focus on the defendant's actual or constructive knowledge disfavors resolution of such claims on a motion to dismiss. *See Thompson v. Dolgencorp, LLC*, 304 F.R.D. 641, 644 (E.D. Okla. 2015) (stating that since *Krupski* "a Rule 12(b)(6) motion may no longer be the proper vehicle" to resolve whether an amended pleading relates back to an earlier pleading); *Estate of Gonzales ex rel. Gonzales v. Brown*, 2014 WL 4748604, at *8 (N.D. Okla. Sept. 23, 2014) (stating that courts should resolve relation back issues "at the summary judgment stage, upon a relevant evidentiary record, rather than upon speculation as to what notice the added defendants had of the action and what they knew or should have known").

Vigil initiated this action *pro se* and was unaware of the role CHP played in the alleged constitutional violations. (*See generally* ECF No. 1.) He alleged that a "Medical Contractor" was deliberately indifferent by refusing to pay for needed surgery. (*Id.* at 11.) Vigil's initial Complaint indicates that he was aware that an entity contracting with

7

CDOC was partially responsible for denying or delaying his medical treatment. (*Id.*) Vigil was simply unaware of the particular roles certain defendants played. Considering that CHP is a private entity contracting with CDOC, CHP and Castillo knew or should have known that Vigil was attempting to sue the entity responsible for denying and delaying his treatment requests. *See Roemer*, 2017 WL 1990558, at *6–7 (finding constructive knowledge where prospective defendants were employees of CDOC and represented by same counsel as previously named defendants).

*Krupski* establishes that a plaintiff may be mistaken as to the identity or role of a defendant despite diligent efforts to properly assert a claim. *See Krupski*, 560 U.S. at 547–52. The Supreme Court recognized that the equities favor placing emphasis on *the knowledge of the defendant rather than the mistake of the plaintiff*. *See id.* at 550. The Court finds that the public policy behind such emphasis is particularly compelling when a plaintiff is *pro se* and has few resources to timely discover the actual identities of the intended defendants. As a result it concludes that Vigil has pled sufficient facts at the pleading stage to overcome CHP Defendants' assertion of the statute of limitations. *See Cosgrove v. Kan. Dep't of Soc. & Rehab. Serv.*, 332 F. App'x 463, 467 (10th Cir. 2009) ("[T]he statute of limitations is an affirmative defense, and to dismiss a claim pursuant to Rule 12(b)(6) on this basis it must be clear from the face of the complaint that the claims are time-barred.")

      ii.    *Paro and Miller*

Vigil alleges that Paro and Miller, CDOC officials responsible for scheduling medical treatment at AVCF, improperly failed to inform his healthcare providers of the need for follow-up care in February 2017. (ECF No. 155 ¶ 98–109.) Paro and Miller

argue that Vigil's claims against them are time-barred because the alleged improper denial of treatment occurred more than two years prior to the filing of his Third Amended Complaint on June 23, 2020, which first named them as defendants. (ECF No. 160 at 8–9; *see also* ECF No. 155 ¶ 49.)

Vigil argues that his claims against Paro and Miller should not be dismissed as time-barred because the statute of limitations should be equitably tolled. (ECF No. 171 at 13.) He posits that he was unable to discover Paro and Miller's identities due to a stay of discovery from September 13, 2018 until April 19, 2019. (*Id.* at 14; *see also* ECF Nos. 36 & 65.)

A court may equitably toll the statute of limitations where extraordinary circumstances render it impossible for a plaintiff to discover information. Colorado's equitable tolling rules apply to § 1983 actions. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (applying state tolling rules to § 1983 action). Colorado law permits equitable tolling where a defendant "engage[d] in fraudulent concealment of facts pertinent to the existence of a claim." *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 853 n.7 (Colo. 1992). A court may also equitably toll the statute of limitations where circumstances outside the plaintiff's control make it impossible for him to timely file a claim despite diligent efforts. *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007).

Vigil does not argue that CDOC Defendants engaged in fraudulent concealment of information. Moreover, a stay of discovery is not the type of extraordinary circumstance warranting equitable tolling of the statute of limitations. *See Brodeur*, 169 P.3d at 150 n.12 (listing examples of extraordinary circumstances in cases where

9

plaintiff was precluded such as closure of courts during wartime, unconstitutional law preventing filing, and plaintiff's internment in prison camp). As Vigil fails to establish circumstances warranting equitable tolling, his claims against Paro and Miller are time-barred. CDOC Defendants' Motion is granted with respect to Paro and Miller, and the claims against them will be dismissed without prejudice.

## B.     Eighth Amendment Deliberate Indifference

Defendants argue that, irrespective of the timeliness of Vigil's claims, he cannot state a viable Eighth Amendment claim against them. (ECF No. 142 at 3; ECF No. 160 at 2.) CDOC Defendants further assert that, because Vigil cannot plead a constitutional violation, they are entitled to qualified immunity.[3] (ECF No. 160 at 2.)

A deliberate indifference claim must satisfy both an objective and subjective prong. The objective prong requires the harm to be sufficiently serious as to implicate the Cruel and Unusual Punishment Clause, meaning that the condition "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). The subjective component of the inquiry is met if an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (10th Cir. 1994).

---

[3] To overcome a defendant's assertion of qualified immunity, a plaintiff must show that (1) the defendant violated the plaintiff's federal constitutional or statutory rights, and (2) the right was clearly established at the time of the violation. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Accordingly, Vigil's failure to establish a constitutional violation would preclude him from overcoming a qualified immunity defense.

i.    *CHP Defendants*

CHP Defendants argue that Vigil cannot state a claim against them because he fails to satisfy the subjective prong of the deliberate indifference inquiry, requiring that they "knew [Vigil] faced a substantial risk of harm and disregarded that risk." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).  CHP Defendants contend that Vigil has not pled that CHP Defendants knowingly disregarded a substantial risk to his health or safety.  (ECF No. 142 at 11.)

Vigil alleges that Castillo and CHP denied requests for follow-up care and surgery.  (ECF No. 155 ¶¶ 47–48, 76–77.)  He further alleges that CHP delayed approving three requests for referral to specialists and one request for surgery.  (*Id.* ¶¶ 67, 70–71, 79, 80, 82, 86–87.)  Vigil alleges that Castillo and CHP were aware of the severity of his condition because they reviewed the requests for treatment by his medical providers but opted to arbitrarily delay or deny provision of the requested treatment.  (*Id.* ¶¶ 67, 70–71, 79, 80, 82, 86–87.)  Given Vigil's allegations that his numerous medical requests placed CHP and Castillo on notice of the extent of his injury, Vigil plausibly alleges sufficient facts to satisfy the subjective prong of the inquiry.

Neither party specifically addresses the objective prong of the deliberate indifference inquiry.  A delay in medical treatment constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  Vigil alleges that he lived with pain in his arm for nearly two years following the initial injury, and ultimately underwent invasive surgery.  (ECF No. 155 ¶¶ 29–89.)  Further, Vigil alleges that he has restricted mobility in his arm, and is unlikely to recover a full range of motion.  (*Id.*

11

¶ 90.)  Accordingly, Vigil has pled sufficient facts to satisfy the objective prong of substantial harm.  *See Sealock*, 218 F.3d at 1210 (finding several hours of severe chest pain due to delay in treatment constituted substantial harm and satisfied objective prong).

CHP argues that, notwithstanding Vigil's pleading of a constitutional violation, CHP is not subject to liability as an entity.  (ECF No. 142 at 11–12.)  As CHP is a private entity acting under color of state law through its contract with the CDOC, Vigil must satisfy the municipal liability principles set forth in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).  *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005); *Sherman v. Klenke*, 653 F. App'x 580, 592–93 (10th Cir. 2016) (applying *Monell* to entity liability claims against CHP).  Specifically, Vigil must establish that CHP maintains a particular custom, policy, or practice, and demonstrate a causal link between such policy and a violation of his constitutional rights.  *Brown v. Bd. of Cnty. Comm'rs of Bryan Cnty*, 520 U.S. 397, 404 (1997).

Vigil argues that CHP has a custom, policy, and practice of arbitrarily delaying and denying prisoners' requests for medical care.  (*Id.* ¶¶ 67, 70–71, 79, 80, 82, 86–87.)  As discussed above, Vigil has alleged that CHP and Castillo, acting pursuant to this policy, violated his constitutional rights by delaying and denying access to necessary treatment, which resulted in enduring pain and potentially permanent injuries.  Vigil's allegations, taken as true, plausibly state facts sufficient to subject CHP to entity liability.  *See Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000 (D. Colo. 2016) (denying CHP's motion to dismiss because CHP was on notice through medical records that plaintiff's condition would worsen due to delay in treatment).  Accordingly, CHP

Defendants' Motion is denied.

    ii.     *Laurence*

Laurence is a physician's assistant who treated Vigil at AVCF. (ECF No. 155 ¶ 2.) Laurence treated Vigil once on December 6, 2016. (*Id.* ¶ 35.) During that appointment, Laurence informed Vigil that his arm was fractured and referred him to an orthopedic specialist. (*Id.*) Vigil alleges that Laurence failed to subsequently submit a request for physical therapy or order any follow-up treatment. (*Id.* ¶¶ 93–97.)

Laurence argues that Vigil fails to establish a constitutional violation because he does not allege that Laurence was responsible for his follow-up care, or was aware that Vigil did not receive adequate treatment, as required to satisfy the subjective prong of the deliberate indifference inquiry. (ECF No. 160 at 13–14.) As stated, to satisfy the subjective prong, Vigil must show that Laurence knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Vigil alleges that Laurence was aware of the severity of his condition through examining Vigil and nonetheless failed to provide follow-up care after the December 2016 appointment. (ECF No. 155 ¶¶ 52, 95.) Vigil alleges that he submitted over twenty "sick call requests" to Laurence regarding his follow-up treatment. (*Id.* ¶ 53.) Vigil further alleges that Laurence was required by CDOC policy to continue to monitor treatment even after referral to another provider. (*Id.* ¶ 27.) He alleges that Laurence's failure to secure follow-up treatment resulted in a delay of treatment of seven months and the eventual need for invasive corrective surgery. (*Id.* ¶ 96.) Accordingly, Vigil has plausibly alleged that Laurence knowingly disregarded a risk of substantial harm, satisfying the subjective prong of the deliberate indifference inquiry.

Neither party specifically addresses the objective prong of the Eighth Amendment analysis, which requires that the deliberate indifference resulted in "substantial harm."  *Olson v. Stotts*, 9 F.3d 1475, 147 (10th Cir. 1993).  As discussed above, the severity of Vigil's injury satisfies the objective prong.

As Laurence asserts qualified immunity, the Court must further determine whether his conduct violated clearly established law.  *See Reynolds*, 370 F.3d at 1030.  For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Weiss v. Casper*, 593 F.3d 1163, 1167 (10th Cir.2010) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007)).  The inquiry should not be "a scavenger hunt for prior cases with precisely the same facts" but instead "whether the law put officials on fair notice that the described conduct was unconstitutional."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The Supreme Court has stated that prison authorities have an obligation to provide medical care to inmates.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Therefore, "pain and suffering which no one suggests would serve any penological purpose" violates "contemporary standards of decency" required by the Eighth Amendment.  *Id.*  The Tenth Circuit has held that delays in medical treatment violate the Eighth Amendment if the delay results in substantial harm.  *Olson*, 9 F.3d at 1477.  The Tenth Circuit has further held that a medical professional's failure to timely treat a serious medical condition constitutes deliberate indifference.  *See Sealock*, 218 F.3d at 1210.

14

In *Sealock*, the plaintiff prisoner complained of severe chest pain, which a prison official ignored, and as a result delayed treatment for eight hours. *Id.* The Tenth Circuit found that the delay in treatment and the plaintiff's resulting endurance of pain for hours constituted deliberate indifference. *Id.* *Sealock* supports the proposition that an official may not disregard a prisoner's nontrivial assertions of severe pain by delaying treatment. *See id.*

Other Tenth Circuit decisions bolster this proposition. In *Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999), the Tenth Circuit held that a plaintiff prisoner pled sufficient facts to state a deliberate indifference claim where he alleged that prison medical staff denied him his prescribed insulin. *Id.* at 1223–24. The *Hunt* court emphasized that delays in providing medical treatment constitute deliberate indifference in "instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Id.* at 1224 (citing *Grant v. Bernalillo Cnty. Det. Ctr.*, 173 F.3d 863 (10th Cir. 1999) (unpublished)). Similarly, in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), the Tenth Circuit reversed a grant of summary judgment to a medical provider where the plaintiff presented evidence that the provider had ignored his assertions of chest pain, which resulted in delay of treatment and endurance of pain for several hours. *Id.* at 758–59.

Vigil plausibly alleges that Laurence's disregard of his requests for treatment resulted in Vigil's unjustified and prolonged suffering, and potentially permanent injury. The weight of authority in the Tenth Circuit establishes that a prison official may not disregard a prisoner's pain, and that delay in treatment which worsens medical issues violates the Eighth Amendment. *See Mata*, 427 F.3d at 758–59; *Sealock*, 218 F.3d at 1210; *Hunt*, 199 F.3d at 1223–24; *see also Jenkins v. Utah Cnty. Jail*, 2015 WL 164194,

15

at *12 (D. Utah Jan. 13, 2015) (stating that "a reasonable employee of a jail in the Tenth Circuit would have understood that delaying access to medical diagnosis or treatment for a serious medical condition, such as a broken bone, may rise to the level of deliberate indifference"). The Court therefore denies CDOC Defendants' Motion with respect to Laurence.

  iii. *Borrego*

Borrego is a nurse practitioner who treated Vigil while he was housed at BVCF. (ECF No. 155 ¶ 70.) Vigil alleges that Borrego failed to provide adequate medical care because she did not appeal the denial of his request for surgery and did not promptly refer him for treatment by specialists. (*Id.* ¶¶ 166–71.)

Borrego argues that Vigil cannot state a deliberate indifference claim against her because he does not allege that she recklessly disregarded a substantial risk of serious harm, thereby failing to satisfy the subjective prong of the inquiry. (ECF No. 160 at 14.) She posits that Vigil does not allege that she knew of CHP's denial of the first request for surgery, nor that she was responsible for appealing denials. (*Id.* at 14.)

Vigil alleges that during an appointment on June 13, 2017, Borrego observed that his arm was not healing properly and sent an e-mail to CHP to follow up on another medical provider's request that Vigil be referred to an orthopedic specialist. (ECF No. 155 ¶ 70.) CHP approved the request that day. (*Id.* ¶ 71.) Vigil visited Borrego again on October 30, 2017. (*Id.* ¶ 79.) When Vigil informed her that he was in pain, Borrego prescribed Tylenol and ordered x-rays. (*Id.*) Two weeks later, Borrego examined Vigil's arm, noted that his range of motion had decreased, and "immediately" submitted a request that Vigil see an orthopedic specialist. (*Id.* ¶ 80–81.) CHP eventually approved

16

the request. (*Id.* ¶ 80–81.)

Vigil's only allegations as to Borrego indicate that she pursued treatment for him each time she examined him and followed up on requests from other medical providers. (*Id.* ¶¶ 70, 79–81, 88.) The Court cannot discern any facts suggesting that Borrego recklessly disregarded risks to Vigil's health. Rather, Vigil alleges that Borrego sought treatment for him and lists no instance of Borrego delaying or denying care. (*Id.* ¶¶ 70, 79–81, 88.) In contrast to his allegations against Laurence, for example, Vigil does not allege that Borrego ignored requests for care. Further, a mere difference in medical opinion as to the appropriate course of treatment does not constitute an Eighth Amendment violation. *Salary v. Goff*, 572 F. App'x 668, 670 (10th Cir. 2014). Accordingly, Vigil fails to plausibly allege facts satisfying the subjective prong of the deliberate indifference inquiry as to Borrego, and therefore cannot state an Eighth Amendment claim against her.

Dismissal of an action is a harsh remedy, and a court may liberally grant a litigant leave to cure pleading deficiencies. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991). Such leave is not to be granted, however, where amendment would be futile. *See Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014). As discussed, Vigil fails to plausibly allege a constitutional violation by Borrego. As this is Vigil's Third Amended Complaint, he has had several opportunities to cure pleading deficiencies and has nonetheless failed to assert a viable claim against Borrego. The Court finds that granting leave to file a fourth amended complaint implicating Borrego would be futile and dismisses the claims against Borrego with prejudice.

17

      iv.    *Foster*

Foster is the former warden of AVCF. (ECF No. 155 ¶ 14.) Vigil alleges that Foster failed to hire qualified medical employees and provide inmates with adequate transportation to medical appointments. (*Id.* ¶ 154.) The transportation issue refers to an incident when Vigil was traveling to a medical appointment and did not arrive due to a flat tire on the vehicle transporting him. (*Id.* ¶ 36.) Vigil further alleges that Foster's understaffing of medical personnel resulted in delays in treatment and failures to respond to requests for treatment. (*Id.* ¶ 155.)

Foster argues that Vigil cannot state a viable deliberate indifference claim against him in his individual capacity because Vigil fails to allege Foster's personal participation in challenged conduct. (ECF No. 160 at 10–12.) Supervisor status alone is insufficient to establish liability without an affirmative link between the supervisor's conduct and a constitutional violation. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Namely, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 683.

Vigil does not raise facts suggesting that Foster subjectively knew and disregarded a substantial risk of serious harm. Rather, he argues that "it is reasonable to infer" that Foster was aware of delays in treatment by AVCF medical staff. (ECF No. 171 at 13.) Vigil urges a significant logical leap from Foster's role as a supervisor to the conclusion that Foster knew of his medical staff's unauthorized delays in treatment. As stated, mere status as supervisor is insufficient to support the required affirmative link for supervisory liability. *See Farmer*, 511 U.S. at 837 (stating that an "official must both

18

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Vigil fails to plausibly allege a claim of supervisory liability against Foster, as he raises no facts supporting Foster's personal participation in any constitutional violation. As with respect to Borrego, the Court further finds that again amending to attempt to assert a viable claim against Foster would be futile. Vigil's individual capacity claim against Foster is therefore dismissed with prejudice.

Finally, Foster argues that sovereign immunity bars Vigil from seeking money damages against him in his official capacity. (ECF No. 160 at 4.) State officials sued in their official capacity are not subject to suit for money damages. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that "[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983"). Vigil does not dispute this assertion, and states that he seeks only injunctive relief against Foster in his official capacity. (ECF No. 171 at 10.) Vigil's official capacity claim against Foster may therefore proceed to the extent that he seeks only injunctive relief. *See Hafer*, 502 U.S. at 25.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. CHP Defendants' Motion to Dismiss (ECF No. 142) is DENIED;

2. CDOC Defendants' Motion to Dismiss (ECF No. 160) is GRANTED IN PART;

3. Vigil's claims against Paro and Miller are DISMISSED WITHOUT PREJUDICE;

4. Vigil's claims against Borrego are DISMISSED WITH PREJUDICE;

5. Vigil's claims against Foster in his individual capacity are DISMISSED WITH PREJUDICE;

6. The CDOC's Motion to Dismiss is otherwise DENIED;

7. The stay of discovery (ECF No. 175) is LIFTED; and

8. No later than **March 10, 2021**, the parties shall contact the chambers of Magistrate Judge N. Reid Neureiter to schedule a Status Conference, or such other proceeding as Judge Neureiter decides is appropriate in order to move this litigation forward.

Dated this 8th day of March, 2021.

BY THE COURT:

William J. Martinez
United States District Judge